# United States District Court

## NORTHERN DISTRICT OF GEORGIA

DSA
9/4/25

UNITED STATES OF AMERICA

v.

RASHAD DAVIS

**WARRANT FOR ARREST**
AGENT TO ARREST

Case Number: 1:25-MJ-935

25-5391MJ

TO:     The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest RASHAD DAVIS

and bring him or her forthwith to the nearest magistrate to answer a **COMPLAINT** charging him or her with: conspiring to knowingly possess with intent to distribute a controlled substance, that is, 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide,

in violation of 21, United States Code, Sections 846, 841(a)(1), and 814(b)(1)(A)(vi).

JOHN K. LARKINS III
Name of Issuing Officer

*[signature]*
Signature of Issuing Officer

ATTEST: A TRUE COPY
CERTIFIED THIS
Date: Sep 05 2025
KEVIN P. WEIMER, Clerk
By: Lisa Glaser
Deputy Clerk

United States Magistrate Judge
Title of Issuing Officer

September 5, 2025
Atlanta, Georgia
Date and Location

Bail Fixed at $_____     by_____
                                          Name of Judicial Officer

## RETURN

This warrant was received and executed with the arrest of the above-named defendant at:

_____

Date Received:_____     _____
                                        Name and Title of Arresting Officer

Date of Arrest:_____     _____
                                        Signature of Arresting Officer

FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Sep 05 2025

KEVIN P. WEIMER , Clerk

By: Lisa Glaser
Deputy Clerk

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

LARRY PHILLIPS and
RASHAD DAVIS

**CRIMINAL COMPLAINT**

Case Number:  1:25-MJ-935

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about September 4, 2025 in Clayton County, in the Northern District of Georgia and elsewhere, defendants did conspire to knowingly possess with intent to distribute a controlled substance, that is, 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide,

in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(vi).

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.    Yes

*Evan J. Leyva*
Signature of Complainant
Evan Leyva

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

September 5, 2025                                        at   Atlanta, Georgia
Date                                                                    City and State

JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Paul R. Jones
Paul.Jones@usdoj.gov

Signature of Judicial Officer

ATTEST: A TRUE COPY
CERTIFIED THIS

Date: Sep 05 2025

KEVIN P. WEIMER, Clerk

By: Lisa Glaser
Deputy Clerk

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Evan Leyva, a Special Agent (SA) with the Drug Enforcement Administration (DEA), depose and say under penalty of perjury:

### Introduction

1.  I am the affiant herein and an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.  By this affidavit, I seek a complaint arrest warrants for Larry PHILLIPS and Rashad DAVIS as there is probable cause to believe that they have conspired to possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (also known as fentanyl), in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(vi).

### Background of Affiant

3.  I am a Special Agent with the DEA and have been so employed since March 2020. As a DEA Special Agent, I have received approximately four months of specialized training at the DEA Training Academy in Quantico, Virginia. This training focused on methods of unlawful drug trafficking; the means by which

drug traffickers and/or manufacturers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. Since completion of the DEA Academy, I have been assigned to the DEA's Atlanta Division Office Enforcement Group One and have been so assigned since October 2020. Prior to my employment as a Special Agent with the DEA, I was employed as a Narcotics Investigator and Georgia Peace Officer with the Gwinnett County Police Department for more than three years. During this time, I have arrested individuals who have been charged with trafficking, possession with intent to distribute, sale, and/or possession of illegal drugs.  I have written and/or participated in the execution of search warrants resulting in the seizure of marijuana, cocaine, methamphetamine, heroin, MDMA, prescription pills, and other illegal narcotics.  These search warrants have also resulted in the seizure of U.S. currency, ledger books, drug customer information lists, bank statements, packaging materials, cellular phones, and other items related to the possession, sale, and distribution of illegal narcotics.  I have also attended formal and informal narcotics related training through the Gwinnett County Police Department.

4.  In connection with my official DEA duties, I investigate criminal violations of state and federal drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 1956 and 1957.

5.  During my employment with DEA, I have been active in investigations involving narcotics trafficking and distribution and money laundering. I have received training on the subject of narcotics trafficking and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. Further, I have consulted with several senior agents who have participated in many wiretap investigations that resulted in a number of arrests and seizures concerning drug trafficking and money laundering. During the course of these investigations, it was apparent that drug traffickers were using telephones in furtherance of their illegal activities. In addition, I have also analyzed telephone toll records and other records and debriefed informants regarding the use of telephones.

6.  Based on my training and experience, and based upon interviews I have conducted with defendants, witnesses, and informants, as well as others, with knowledge of the importation, distribution, and transportation of controlled substances and of the laundering and concealing of proceeds derived from drug

trafficking, I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, the methods of importing, packaging, transferring and distributing narcotics, the use of electronic means and cellular telephones for calls and electronic communications including but not limited to email and text messaging, the use of numerical codes, code words and other methods of avoiding detection by law enforcement, as well as the types and amounts of profits made by narcotics dealers and the methods, language and terms that are used to disguise the source and nature of the profits from their illegal narcotics dealing. I also am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, the use of couriers to transport currency and proceeds, the use of third parties to purchase or hold title to assets, and the use of off-shore accounts. Additionally, I have consulted with senior agents who have written and/or executed search, seizure, and arrest warrants pertaining to the seizure of all types of criminal evidence, including illegal drugs, drug paraphernalia, drug proceeds, drug records, and evidence of other types of crimes.

7. I know, based upon my training, experience, and discussions with senior agents that narcotics trafficking and money laundering organizations routinely utilize a number of other operational techniques designed to achieve two goals: first, the successful facilitation of the organization's illegal activities, including the

transportation and distribution of controlled substances and the subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

8.  I have consulted extensively with more experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career has been further enhanced by other law enforcement agents with even greater experience in conducting drug investigations.

### Sources of Information

9.  The facts and information contained in this affidavit are based on my personal knowledge, training and experience, as well as the training and experience of other law enforcement officers involved in this investigation.

10. As this affidavit is submitted for a complaint charging Larry PHILLIPS and Rashad DAVIS with controlled substance offenses, this affidavit includes only those facts that are necessary to establish probable cause to charge PHILLIPS and DAVIS. I have not set forth all the facts that have been developed thus far in the investigation. I do not rely upon facts not set forth herein in reaching my conclusion that probable cause exists, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a search warrant.

## Statement of Probable Cause

11. On September 4, 2025, DEA Atlanta Enforcement Group 1 agents were contacted by DEA Phoenix to assist with an ongoing investigation. DEA Phoenix informed DEA Atlanta that they identified during their investigation Larry PHILLIPS, who was flying from Phoenix, Arizona, to Atlanta, Georgia, and was believed to be transporting a large amount of fentanyl.

12. DEA Phoenix informed DEA Atlanta that in the early morning of September 4, 2025, an officer with the Transportation Security Administration (TSA) was conducting routine checks on checked baggage at the Phoenix Sky Harbor International Airport. The TSA officer identified an anomaly in a bag that belonged to Rashad DAVIS, who was booked on a Delta Air Lines flight 918 to Atlanta. Once identifying the anomaly, the TSA officer opened the bag to investigate the anomaly and located 8 brick-like objects. Upon the discovery, DEA agents were called to the scene and took possession of the suspected 8 kilograms of fentanyl[1] and placed DAVIS in custody.

13. Upon a review of the Delta reservation for DAVIS, agents learned that on the same reservation Larry PHILLIPS had also had a ticket purchased for the same flight for DAVIS. Agents identified that PHILLIPS was currently on the Delta

---

[1] The brick like objects were later transported to the Phoenix PD crime lab and yielded a positive result for fentanyl and xylazine.

flight and was in the air on the way to Atlanta. Agents also learned that PHILLIPS also checked a bag prior to boarding the flight.

14. Following Delta flight 918 landing in Atlanta, law enforcement officers located PHILLIPS' bag. A Police K9 was utilized and a free air sniff of the suitcase that PHILLIPS had checked was conducted by Senior Police Officer D. Pickering (radio # 1884). Senior Police Officer D. Pickering informed agents that K9 Rex provided a positive alert to the odor of narcotics emitting from the suitcase.

15. Based upon the above information, I obtained a search warrant for the suitcase that PHILLIPS had checked (Case No. 1:25-MC-1700). The suitcase was searched on September 4, 2025, and the search revealed approximately 6 kilograms of a suspected controlled substance. The 6 kilograms were tested and returned positive results for the presence of fentanyl. Moreover, the 6 kilograms seized in Atlanta contained stamps on them identical to the fentanyl seized in Phoenix. Also, inside the suitcase, there was a dry cleaning tag that had PHILLIPS' name on it.

16. Venue is appropriate in the Northern District of Georgia because the final destination of PHILLIPS' flight was in this district and DAVIS's final destination, as well as the fentanyl that he was carrying, was intended to be Atlanta.

## Conclusion

17. Based on the information above, I respectfully assert that probable cause exists to believe that Larry PHILLIPS and Rashad DAVIS have conspired to

possess with intent to distribute controlled substances, that is, 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (also known as fentanyl), in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(vi).